IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | |
| | : | |
| ARTHUR ISHKHANIAN | : | NO. 06–CR-226-2 |
| | : | NO. 11-CV-2216 |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                       **JUNE 16, 2011**

Presently before this Court is Petitioner Arthur Ishkhanian's ("Ishkhanian") pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). For the reasons set forth below, this Motion is denied.

**I.   PROCEDURAL HISTORY**

On May 11, 2006, Ishkhanian was charged by a federal grand jury with possession of 500 grams or more of methamphetamine with intent to distribute. On November 30, 2007, pursuant to a plea agreement, Ishkhanian appeared before this Court and pled guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846; possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

At that time, Ishkhanian agreed to the following factual bases to support the guilty plea: Ishkhanian was a member of a conspiracy to distribute and possess with intent to distribute approximately 100 pounds of methamphetamine over a two-year period from 2004 through April 13, 2006, the date of his arrest. (N.T. 14, 11/30/07.) Ishkhanian began distributing methamphetamine after he was approached by co-conspirator Levon Arakelyan ("Arakelyan")

and asked if he could sell and distribute methamphetamine that Arakelyan could supply. (Id.) Ishkhanian agreed and this began an arrangement whereby Arakelyan directly supplied Ishkhanian with multi-pound quantities of methamphetamine, ranging from three to six pounds of methamphetamine.[1] (Id.) On April 13, 2006, Ishkhanian was approached by DEA agents who disclosed to him the nature of the evidence they had gathered against him. He then consented to a search of his residence which revealed six clear zip lock bags that contained a clear, crystal-like substance, later determined to be methamphetamine, in addition to $197,500 in United States currency. Ishkhanian admitted to the agents that he had in his possession this amount of methamphetamine and currency. (Id. at 22.)

On May 11, 2006, Ishkhanian, Petrosyan, and Mitchell Orlando[2] were charged in an indictment with possession of 500 grams or more of methamphetamine with intent to distribute. On August 8, 2006, Arakelyan, who had been arrested in Las Vegas, was charged in a separate indictment with one count of conspiracy. This case proceeded to trial in April 2007, at which, Ishkhanian testified against Arakelyan during the two-week jury trial. Arakelyan was found guilty of this charge on May 3, 2007. (Presentence Report ("PSR") ¶ 14.)

Shortly after Arakelyan's trial on May 25, 2007, Ishkhanian filed an unopposed Motion for Modification of Bail Conditions, seeking to have the conditions of his then current house arrest and electronic monitoring replaced with daily calls to pretrial services. This Motion was granted on May 31, 2007. On August 1, 2007, Ishkhanian was charged in a superseding

---

[1]After Arakelyan lost his commercial driver's license in May 2005, Arakelyan and Ishkhanian partnered with Arakelyan's brother-n-law, Vahe Petrosyan ("Petrosyan"), who owned a commercial trucking business, to transport the methamphetamine. (Id. at 3.)

[2]Orlando was a customer of Ishkhanian in the Philadelphia area. (Id. at 4.)

indictment, along with Petrosyan, Arakelyan, Orlando, and eleven (11) additional defendants, the majority of whom were Ishkhanian's larger-volume customers. (PSR ¶¶ 3, 20.)

On November 30, 2007, Ishkhanian entered a plea pursuant to a written guilty plea agreement with the government. At the guilty plea colloquy, Ishkhanian acknowledged that he reviewed the terms of the plea agreement with his attorney, and that he understood those terms. (N.T. 23, 11/30/07.) Based on Ishkhanian's responses to the Court, we found that he "understands his rights and is voluntarily giving up those rights." (Id.) Ishkhanian agreed that, with very little limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence.[3] The Government asked the Court to allow bail to remain the same,

---

[3]Specifically, the appellate waiver in the plea agreement stated:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law hold cannot be waived.
>
> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
>
> (1) the defendant's sentence on any count exceeds the statutory maximum for that count as set forth in paragraph 4 above;
>
> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;

3

but on December 10, 2007 moved for a revocation of Ishkhanian's bail and the entry of an order for detention. Ishkhanian was scheduled to begin serving a state sentence on an unrelated narcotics offense on January 2, 2008. In response to this Motion, Ishkhanian's counsel negotiated a reporting date of February 4, 2008, and Ishkhanian was ordered to report on this date. (PSR ¶ 194.) Ishkhanian, however, failed to report on this date, and a bench warrant was issued. (Id. ¶ 195.) After an extensive fugitive investigation conducted by the United States Marshals Service, Ishkhanian was arrested in Pensacola, Florida in possession of a false Ohio driver's license and false credit cards. (Id. ¶¶ 196, 221.)

On January 16, 2009, this Court held a sentencing hearing for Ishkhanian's methamphetamine charges. Prior to the hearing, the Probation Office ("Probation") prepared a presentence report. In it, Probation enhanced Ishkhanian's base level of 38 by two levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice for failing to self-surrender, absconding from federal supervision, and attempting to evade apprehension. (PSR ¶¶ 147, 158, 162-63.) Ishkhanian was also not credited in the presentence report with a reduction for acceptance of responsibility, therefore, leaving his offense level at 40. (Id. ¶¶ 164, 168.) Ishkhanian's criminal history category was calculated as VI based on his career offender status, and thus, the resulting advisory sentencing guideline range was calculated as 360 months to life imprisonment. (Id. ¶

---

> (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 125 S. Ct. 738 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.
>
> If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

240.)  Ishkhanian argued at sentencing that Probation incorrectly denied him a three-point reduction of his offense level for acceptance of responsibility.  The Government agreed with the assessment of Probation that Ishkhanian was not entitled to this reduction because, although he had earlier cooperated with the government, Ishkhanian later committed a new crime by fleeing the jurisdiction.  This Court then imposed a sentence of 360 months imprisonment, the bottom of the advisory guideline range.

Ishkhanian filed an appeal to the Third Circuit Court of Appeals contesting the sentence and asserting that his plea agreement was invalid.  The Government sought to enforce the waiver of appeal that Ishkhanian had agreed to in his plea agreement.  In an opinion dated November 5, 2009, the court affirmed this Court's judgment of sentence concluding that Ishkhanian had "failed to show that the District Court's oversight[4] of one aspect of the requirements of Rule 11 affected his substantial rights or that enforcing the waiver in his plea agreement would result in a miscarriage of justice."  See Ishkhanian, 351 Fed. Appx. at 747.  The court further concluded that Ishkhanian had not demonstrated "plain error" and enforced the appellate waiver in the plea agreement declining to consider Ishkhanian's challenge to the reasonableness of his sentence.  Id.

Subsequently, Ishkhanian filed the instant § 2255 Motion on May 3, 2011, and asserts the following claims:

> 1.  ineffective assistance of counsel in that counsel, Jack McMahon, Jr., Esq., advised Ishkhanian to plead guilty even after he told him he was innocent because any state sentence he incurred

---

[4]The court indicated that the oversight was this Court's failure to address Ishkhanian personally to inform him of and determine that he understood the waiver of appeal, but instead, let the prosecutor explain the waiver at the plea hearing.  See United States v. Ishkhanian, 351 Fed. Appx. 741 (3d Cir. 2009).

would run concurrent to any federal sentence imposed;

2. violation of "double jeopardy" in that he was punished for the same crime twice because his base level for sentencing was enhanced two points for obstruction of justice and he was also convicted and sentenced separately for escape;

3. "breach of contract" because he signed a plea agreement which stated he was guilty of possession with intent to distribute 500 grams of methamphetamine, but he was sentenced for "15 kilos or more of methamphetamine," and the court never informed him of such; and

4. "violation of due process" because his plea agreement stated that his mandatory minimum sentence was "20 years and 8 years supervised release," and he was never given the chance to challenge an enhancement because the government never filed a motion to increase it.

(§ 2255 Motion at 6-10.)

## II. STANDARD OF REVIEW

Ishkhanian is entitled to relief only if his custody or sentence violate federal law or the Constitution. Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under § 2255. See Gov't of the V. I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an

evidentiary hearing is needed to determine the truth of the allegations. See Gov't of the V.I. v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994). Accordingly, a district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting U.S. v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).

## III. DISCUSSION

Ishkhanian has filed a § 2255 Motion despite agreeing in his plea agreement to waive the right to file such a motion. The government argues that Ishkhanian's waiver should be enforced, and his Motion dismissed. We agree.

### A. Waiver of Collateral Rights

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001)(citing United States v. Mezzanatto, 513 U.S. 196, 201 (1995)). The Third Circuit has held that a waiver of appellate or collateral rights is enforceable provided that: (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243–44 (3d Cir. 2008)); see also Khattak, 273 F.3d at 562–63; United States v. Shedrick, 493 F.3d 292, 297–98 (3d Cir. 2007). We will address each of these three requirements.

#### 1. Knowing and Voluntary Nature of the Waiver

Pursuant to his plea agreement, Ishkhanian agreed to waive his right to take a direct appeal, except that he was permitted to take a direct appeal only if the United States appealed

from the sentence, or if the sentence exceeded the statutory limits or unreasonably exceeded the guideline range. Ishkhanian also agreed to waive his right to file a motion to vacate sentence under 28 U.S.C. § 2255 attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence. Ishkhanian signed the plea agreement acknowledging that he understood the terms of the agreement, and also acknowledged such at the plea hearing. (N.T. 13, 11/30/07). We, thus, find that Ishkhanian knowingly and voluntarily entered into the plea agreement.

**2. Exception to Waiver**

Next, addressing Goodson's second element, we find that none of the exceptions in the waiver applies in this case. 544 F.3d at 536. The plea agreement specifically permits only presentation of claims on appeal that a "defendant's sentence on any count exceeds the statutory maximum for that count," "the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines," or "the sentencing judge . . . imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court."[5] (Plea Agreement at §§ (b)(1)-(3)).

Here, Ishkhanian's sentencing guideline range was calculated as 360 months to life imprisonment. This Court then imposed a sentence of 360 months imprisonment. This sentence was less than the statutory maximum of lifetime imprisonment, and did not represent an upward departure or variance from the applicable guideline range. Thus, the circumstances outlined in the plea agreement in which a collateral attack under Section 2255 would be permitted did not

---

[5] See footnote 3.

occur.

### 3. Miscarriage of Justice

Lastly, we next address whether enforcement of the waiver "would work a miscarriage of justice in this case." United States v. Mabry, 536 F.3d 231 (3d Cir. 2008). We are to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Id. at 242-243. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. However, the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character ( e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . . " Id. (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

To date, the Third Circuit has identified only limited circumstances as presenting a miscarriage of justice permitting a collateral challenge to proceed despite the waiver. The Court has stated that an appellate waiver may not be enforced if the defendant should have been permitted to withdraw his guilty plea, United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005); if the defendant did not understand the plea agreement itself due to ineffective assistance of counsel, United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was ineffective in failing to timely file an appeal raising an issue explicitly exempted from the appellate waiver provision, id.; or if the government breached its own obligations under the plea agreement, United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008).

None of these circumstances, however, exist in this case. In fact, as noted earlier, the issue of whether a "miscarriage of justice" would result from the enforcement of Ishkhanian's appellate waiver was already considered by the Third Circuit in an appeal from this Court's sentence. See Ishkhanian, 351 Fed. Appx. at 741. In that appeal, Ishkhanian argued that enforcement of the waiver in his plea agreement would result in a miscarriage of justice because this Court failed to comply with Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure. This rule imposes a duty upon a district court during a change-of-plea hearing to "address the defendant personally in open court." Fed. Rule Crim. P. 11(b)(1)(N). Ishkhanian argued that this Court violated this Rule when it permitted the prosecutor to summarize the terms of the appellate waiver, and that this Court should have conducted a separate discussion regarding the terms of the appellate waiver and independently confirm that he understood the effect of the waiver before accepting his plea.[6] Id. at 744. The court stated that "a deviation from our Rule 11(b)(1) precedents affect the substantial rights of a defendant seeking to appeal his sentence if there is a reasonable probability that the aberration 'precluded him from understanding that he had a right to appeal and that he had substantially agreed to give up that right.'" Id. at 745 (citing United States v. Goodson, 544 F.3d 529, 541 (3d Cir. 2008)). The court determined that Ishkhanian had not "shown a reasonable probability that the District Court's Rule 11 error prevented him from understanding the effect and breadth of his appellate waiver." Id. at 746. The court noted that "In total, Ishkhanian was informed of the waiver on at least four separate occasions: once when reviewing the plea agreement with counsel, once when executing the acknowledgment attached

---

[6]We note that Ishkhanian did not raise this alleged Rule 11 error at any time before this Court.

thereto, and twice during his change of plea hearing." Id. Accordingly, the court concluded that Ishkhanian failed to "show that the District Court's oversight of one aspect of the requirements of Rule 11 affected his substantial rights or that enforcing the waiver in his plea agreement would result in a miscarriage of justice." Id. at 747.

Here, it is clear that our Court of Appeals has already fully considered the issue of whether enforcement of the waiver would result in a miscarriage of justice in this case. Thus, for the same reasons outlined in that court's decision, we find that Ishkhanian was adequately informed of the appellate waiver in his plea agreement and that enforcement of such will "not work a miscarriage of justice." Goodson, 544 F.3d at 536. This Motion is, therefore, dismissed.

An appropriate Order follows.